# Frances L. YARBROUGH *v.* CHECKER CAB CO., Inc., Jimmy L. DIGGS and FIREMAN'S FUND AMERICAN INSURANCE COMPANIES

73-267                                                    507 S.W. 2d 105

## Opinion delivered April 1, 1974

*Hobbs and Longinotti,* for appellant.

*Barber, McCaskill, Amsler & Jones,* for appellees.

CARLETON HARRIS, Chief Justice. Appellant, Frances L. Yarbrough, instituted suit against Checker Cab Co., Inc. and Jimmy L. Diggs, alleging personal injuries sustained on July 17, 1971 due to the negligence of Diggs while acting within the scope of his employment as a driver for appellee, Checker Cab Co., Inc. Appellees answered, denying all material allegations of the complaint. Thereafter, appellant learned that the cab company carried no policy of automobile liability insurance on its vehicles, acting as a self-insured under the provisions of Ark. Stat. Ann. § 75-1488 (Repl. 1957)[1] (a part of the Motor Vehicle Safety Responsibility Act) enacted in 1953, and thereupon amended her complaint naming her

[1]"a. Any person in whose name more than 25 vehicles are registered in this State may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in subsection b of this section.

"b. The department may, in its discretion, upon the application of such a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such persons. Such certificate may be issued authorizing a person to act as a self-insurer for

own liability insurance carrier, Fireman's Fund American Insurance Companies, a party to the action under the uninsured motorist provisions of said policy. This last appellee filed a separate answer to the amended complaint, denying all material allegations, and further specifically denying that Diggs was an uninsured motorist. Thereafter, Fireman's Fund filed a motion for summary judgment in the Garland County Circuit Court, supporting said motion by the deposition of Robert L. Jones, President of Checker Cab Co., Inc., wherein Mr. Jones stated, *inter alia*, that his corporation was a self-insurer and had obtained a certificate of self-insurance from the Revenue Department of the State of Arkansas on June 23, 1970.[2] A copy of the certificate advising the cab company that it had qualified as a self-insured was also offered.[3] The policy itself provides that the term " 'uninsured automobile' shall not include *** an automobile or trailer owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law."

The court granted the summary judgment, and from such judgment, appellant brings this appeal.

Ark. Stat. Ann. § 75-203 (Repl. 1957), up until 1961, provided as follows:

"No license shall be issued for and no taxicab, automobile, or similar vehicle used for hire, shall be operated, or used in and upon the streets, roads, and highways of the State of Arkansas, within or without the corporate limits of any city or village, for the purpose of carrying passengers for hire, and it shall be unlawful to so operate such taxicab, unless there shall have been fil-

---

either property damage or bodily injury, or both.

"c. Upon not less than 5 days' notice and a hearing pursuant to such notice, the department may upon reasonable grounds cancel a certificate of self-insurance. Failure to pay any judgment within 30 days after such judgment shall have become final shall constitute a reasonable ground·for the cancelation of a certificate of self-insurance. (Acts 1953, No. 347 § 88, p. 955.)"

[2]Checker Cab admitted in its answer to the amended complaint that the cab driven by Diggs on July 17, 1971, and involved in the accident, was an uninsured automobile, and Mr. Jones said that none of his 27 or 28 taxicabs were paid for, all being subject to mortgage or lien, "every one of them."

[3]This copy appears in the abstract, it being stated that it was inadvertently omitted from the record.

ed with the Commissioner of Revenue of the State of Arkansas, a liability contract of insurance or certificate of insurance, issued to the owner of such taxicab, which shall be substantially in the form of the standard automobile liability insurance policy in customary use, to be approved by the Commissioner of Revenue, and issued by an insurance company licensed to do business in the State of Arkansas, said policy to secure payment, in accordance with the provisions thereof, to any person, except employees of the owner, for personal injuries to such persons and for any damage to property, except property owned by, rented to, leased to, in charge of, or transported by the owner, other than baggage of passengers, caused by the operation of such taxicab, for the following amounts:

"As respects injuries to persons, to the extent of five thousand and no/100 dollars ($5,000.00) for the injury or death of any one (1) person and subject to that limit for each person; ten thousand and no/100 dollars ($10,-000.00) for each accident; and, as respects damages to property, one thousand and no/100 dollars ($1,000.00) for each accident. It is further provided, however, that in lieu of such policy of insurance such owner may file a bond to be signed by some solvent Surety Company licensed to do business in this State, which bond shall be in the form approved by the Commissioner of Revenue, and shall be conditioned for the payment of property damage and personal injuries in the same manner and to the same extent herein provided in the case of the filing of insurance policy or policies. (Acts 1949, No. 485, § 1, p. 1369.)"

As shown, this statute was passed by the General Assembly of 1949.

We think the court erred in granting the summary judgment, and we do not consider that the Motor Vehicle Safety Responsibility Act (Ark. Stat. Ann. §§ 75-1401—1493 [Repl. 1957]) repealed Ark. Stat. Ann. § 75-203. In fact, Ark. Stat. Ann. § 75-1487, immediately preceding Ark. Stat. Ann. § 74-1488 (the self-insurers section relied upon by appellees) provides:

"Except for section 18 (§ 75-1418) and 74 (§ 75-1474, [4] this act *shall not apply with respect to any vehicle which is subject to the requirements of existing laws of this State requiring insurance or other security on motor vehicles.*" [Our emphasis]

Equally important, in evidencing the intent of the General Assembly, is Ark. Stat. Ann. § 75-1489, which immediately follows the self-insurance section, and provides:

"This act (§§ 74-1401—75-1493) *shall in no respect be considered as a repeal of the State motor-vehicle laws, but shall be construed as supplemental thereto.* [Our emphasis]

"Act No. 160 of 1951[5] is hereby repealed except with respect to any accident, or judgment arising therefrom, or violation of the motor-vehicle laws of this State, occurring prior to the effective date of this act. (Acts 1953, No. 347, § 89, p. 955)"

If there could still be any possible doubt of the intent of the General Assembly, same is completely dissolved by the action of the legislature in 1961 when Ark. Stat. Ann. § 75-203 was amended by Act 473 of that year, such amendment making only three changes. These increased the amount for injury to one person from $5,000.00 to $10,000.00; increased the amount for each accident from $10,000.00 to $20,000.00, and with reference to damage to property, increased the amount from $1,000.00 to $5,000.00. In addition to the other sections mentioned, this amendatory legislation by the General Assembly in 1961, eight years after the passage of the "self-insurers statute", has to be the "clincher" that the General Assembly never had any intention of taxicabs operating without insurance as provided by § 75-203. Since it is admitted that no insurance was carried on the vehicle involved in the accident mentioned herein, it follows that Checker Cab Co. and its driver, Jimmy Diggs, come under the category of "uninsured motorists", and the court erred in granting the summary judgment.

---

[4] These sections have nothing to do with the issue in this case, the first section referring to reporting accidents and the last excepted section permitting the owner of a motor vehicle to give proof of financial responsibility on behalf of his employee, or member of his immediate family or household in lieu of the furnishing of proof by such other person.

[5] Act 160 of 1951 was a previous financial responsibility law.

In accordance with what has been said, the judgment is reversed and the cause remanded to the Garland County Circuit Court with directions to proceed in a manner not inconsistent with this opinion.